IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CASE NO. 4:18-cr-00339

UNITED STATES OF AMERICA

vs.

DUSTIN CURRY,
CLINT CARR,
HASSAN BARNES, and
FRASIEL HUGHEY,
                              Defendants.
_____/

UNITED STATES' MOTION FOR AUTHORIZATION TO RELEASE
FOUR TELEPHONE RECORDINGS SUBJECT TO PRIVILEGE ASSERTION

The United States of America, by and through its assigned Filter Team,[1] respectfully submits this Motion seeking the Court's authorization to release four telephone recordings (the "Recordings") to the Prosecution Team in this matter.

The Recordings ostensibly contain Potentially Protected Material ("PPM")[2] that belonged to a series of now-defunct Texas companies Defendant Carr owned.  Beginning in 2018, the State

---

[1] The Filter Team attorney in this case is DOJ Trial Attorney Timothy J. Coley.  The Filter Team attorney is assigned to the U.S. Department of Justice, Criminal Division, Fraud Section's Special Matters Unit and has a separate reporting and supervisory chain from the Prosecution Team in this case.  Further, the Filter Team attorney is supported by paralegals and other professional staff who are not part of the Prosecution Team.  The Filter Team attorney and his supporting staff only conduct the filter review and are not involved in the investigation or proceedings related to the above-captioned matter.

[2] "Potentially Protected Material" is defined as material that could potentially garner the protections of the attorney client privilege, work product doctrine, or other legally recognized privileges.

of Texas administratively dissolved Carr's companies, known collectively as "CC Pharmacy,"[3] and the Texas Secretary of State deemed the company's charters forfeited.  *See* Exhibit A (CC Pharmacy, LLC Corporate Filings), Exhibit B (CC Pharmacy 2, LLC Corporate Filings), Exhibit C (CC Pharmacy 3, LLC Corporate Filings).[4]   CC Pharmacy further has not conducted any legitimate business in several years, nor has it taken any action following its dissolution to revive operations.  *See infra* pp. 3-4.

Accordingly, as a result of its dissolution and cessation of operations, CC Pharmacy no longer possesses a valid claim to any attorney-client privilege or other protections that the company may have once held when it was a going concern.  *See United States v. Walters*, No. 2:19-CR-51-KS-MTP, 2020 WL 1934803, at *2 (S.D. Miss. Apr. 21, 2020) ("A dissolved corporation does not have the same concerns as a deceased natural person and therefore has less need for the privilege after dissolution is complete.") (quoting *City of Rialto v. U.S. Dept. of Defense*, 492 F. Supp. 2d 1193, 1197 (C.D. Cal. 2007).  For these reasons, and those set forth more fully below, the Government respectfully seeks the Court's approval to release the Recordings to the Prosecution Team.[5]

---

[3] "CC Pharmacy" refers to CC Pharmacy, LLC, and its affiliate companies, CC Pharmacy 2, LLC and CC Pharmacy 3, LLC.  These entities were all owned by Defendant Carr, and, as set forth below, are dissolved and defunct under the laws of the State of Texas.

[4] Exhibits A-C contain true and correct copies of records obtained directly from the websites maintained by the Texas Comptroller of Public Accounts and the Texas Secretary of State, as of October 4, 2021.   *See Taxable Entry Search*, Texas Comptroller of Public Accounts, https://mycpa.cpa.state.tx.us/coa/;   *SOSDirect*, Texas Secretary of State, https://www.sos.state.tx.us/corp/sosda/index.shtml.

[5] On June 24, 2021, the Filter Team produced the four Recordings in its possession to counsel for Defendants.  Pursuant to Cr.L.R. 12.2, the Government has conferred with counsel for Defendants Curry, Carr, Hughey, and Barnes, who are CC Pharmacy's only known potential privilege claimants.   Defendants Curry, Barnes, and Hughey stated that they do not possess a privilege interest in the Recordings; however, Defendant Carr claimed a privilege interest in the Recordings, and he opposes the Government's Motion.

## FACTUAL BACKGROUND

A.   **CC Pharmacy's Registration, Dissolution, and Cessation of Operations.**

Defendant Carr registered CC Pharmacy, LLC to conduct business in the State of Texas on November 5, 2015; he registered its affiliate companies, CC Pharmacy 2, LLC and CC Pharmacy 3, LLC, on March 2, 2016 and November 22, 2016, respectively. *See* Exs. A-C at 2.[6]  While active companies, CC Pharmacy operated registered retail pharmacies that distributed and dispensed Schedule II-V controlled substances, including Oxycodone, Hydrocodone, and others.  Indictment [Dkt. No. 1] ¶¶ 11-14, 32.  Defendant Carr owned CC Pharmacy, while Defendant Curry served as Operations Manager, and Defendant Barnes served as the Pharmacist-in-Charge of the Houston location. *Id.* ¶¶ 9-12.

Beginning in October 2018, the State of Texas administratively dissolved CC Pharmacy and its affiliate companies.  First, the Texas Comptroller of Public Accounts "involuntarily ended" the company's right to transact business in the State of Texas for failure to pay franchise taxes.  Exs. A-C at 2.  Then, the Texas Secretary of State deemed CC Pharmacy's charters forfeited and terminated the company's rights to conduct business, as follows:

---

[6] The Government respectfully requests that the Court take judicial notice of the true and correct copies of the records attached as exhibits to the Motion, which were obtained directly from the State of Texas's official governmental and regulatory databases, as well as public records databases. *See Swindol v. Aurora Flight Sciences Corp.* 805 F.3d 516, 518 (5th Cir. 2015) ("We conclude that the accuracy of these public records contained on the Mississippi Secretary of State's and the Virginia State Corporation Commission's websites cannot be reasonably questioned.") (citing *Coleman v. Detke*, 409 F.3d 665,667 (5th Cir. 2005)); *see also Victory Medical Center Beaumont, L.P. v. Connecticut General Life Insurance Company*, 2018 WL 3467915 at *3-4 (E.D. Tex. July 17, 2018) (finding that Texas Secretary of State filings have previously been considered in connection with Rule 12(c) motions).

- On October 19, 2018, after determining that CC Pharmacy, LLC had failed to revive its forfeited privileges within 120 days of its suspension by the Texas Comptroller of Public Accounts, the Texas Secretary of State's office issued a forfeiture notice for the company's charter, certificate or registration.

- On October 19, 2018, after determining that CC Pharmacy 2, LLC had failed to revive its forfeited privileges within 120 days of its suspension by the Texas Comptroller of Public Accounts, the Texas Secretary of State's office issued a forfeiture notice for the company's charter, certificate or registration.

- On February 29, 2020, after determining that CC Pharmacy 3, LLC had failed to revive its forfeited privileges within 120 days of its suspension by the Texas Comptroller of Public Accounts, the Texas Secretary of State's office issued a forfeiture notice for the company's charter, certificate or registration.

Exs. A-C.  CC Pharmacy did not file any records thereafter to revive its registrations or submit any further filings with the Texas Secretary of State following its dissolution.  *See* Exhibit D (CC Pharmacy Corporate Filing Record).[7]

Nor does CC Pharmacy possess any active pharmacy licenses in the State of Texas. According to the "Pharmacy Search" function on the Texas State Board of Pharmacy's website, CC Pharmacy, LLC's pharmacy license expired as of March 31, 2018, and an attempted inspection of the pharmacy as early as September 29, 2016 failed due "no answer at listed phone #."  *See* Exhibit E (CC Pharmacy, LLC Licensing Information).[8]  Similarly, CC Pharmacy 3's pharmacy license expired as of March 2019.  *See* Exhibit F (CC Pharmacy 3, LLC Licensing Information). The "Pharmacy Search" function on the Texas State Board of Pharmacy's website returns no results for CC Pharmacy 2, LLC.  *See* Exhibit G (CC Pharmacy 2, LLC Licensing Search).

---

[7] Exhibit D contains true and correct copies of records obtained directly from the website maintained by the Texas Secretary of State, as of October 1, 2021.  *SOSDirect*, Texas Secretary of State, https://www.sos.state.tx.us/corp/sosda/index.shtml (last visited October 1, 2021).

[8] Exhibits E-G contain true and correct copies of records obtained directly from the website maintained by the Texas State Board of Pharmacy, as of October 1, 2021.  *See Pharmacy Search*, Texas State Board of Pharmacy, https://www.pharmacy.texas.gov/dbsearch/phy_search.asp.

Moreover, an Experian commercial credit score search indicates that CC Pharmacy and its affiliated entities do not possess any active account balances, debts, open lines of credit, revenues, or any other indication that they remain going concerns.  *See* Exs. H-J at 4-7 (Experian Commercial Credit Scores reports for CC Pharmacy companies).  A Westlaw search of all state and federal jurisdictions for "cc pharmacy" likewise shows no active or recent legal matters.  *See* Ex. K (Westlaw search for "cc pharmacy").[9]

### B.     The Government Obtains Possession of the Recordings.

Beginning in 2017, after learning of potential controlled substances violations at the company, the pharmacist at CC Pharmacy 2, LLC approached law enforcement and began recording his telephone conversations with Defendants and others affiliated with CC Pharmacy. After being approached by law enforcement, a second CC Pharmacy employee began recording his conversations with Defendants.  Both individuals then provided these call recordings to the Government, including three of the four Recordings.  In addition, on November 13, 2017, agents with the U.S. Drug Enforcement Administration executed search warrants at all three CC Pharmacy locations, seizing numerous documents, files, computers, and electronic devices, including one which yielded the fourth Recording.  After listening to the first few seconds of the Recordings and immediately recognizing the voice of CC Pharmacy's outside attorney, Don Lewis, but not hearing the substance of the conversations, the Government immediately segregated the Recordings as PPM.

---

[9] Exhibits H-K contain true and correct copies of records obtained from public databases displaying Experian Commercial Credit Score reports and WestLaw queries, using the following keyword search terms:  "CC Pharmacy, LLC" (Ex. H), "CC Pharmacy 2, LLC" (Ex. I), "CC Pharmacy 3, LLC" (Ex. J), "cc pharmacy" (Ex. K).

Thereafter, the Government instituted a Filter Team to review the seized materials, including the Recordings and other PPM, to ensure that the Government Prosecution Team would not have access to documents protected by the attorney-client privilege or other privileges or protections.[10]   Combined, the Recordings span 41 minutes and 49 seconds, and they capture conversations potentially containing or discussing legal advice from CC Pharmacy's now-deceased attorney Lewis in or about 2017.

## APPLICABLE LEGAL STANDARDS

The aim of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn v. United States*, 449 U.S. 383, 389 (1981).  But because "the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose."  *Fisher v. United States*, 425 U.S. 391, 403 (1976).  As the Fifth Circuit has recognized, "because the privilege is 'an obstacle to truthseeking,' it must 'be construed narrowly to effectuate necessary consultation between legal advisors and clients.'"  *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (quoting *In re LTV Sec. Litig.*, 89 F.R.D. 595, 606 (N.D. Tex. 1981)); *see also United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997) ("[T]he privilege is to be construed narrowly to apply only where its application would serve its purposes . . . .").

Courts long have recognized that a corporation may assert the attorney-client privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).  But, unlike for a

---

[10] The Filter Team's review of the search warrant material is ongoing, pursuant to which the Filter Team previously has released certain non-PPM records to the Prosecution Team.  The Government may at a future point file a motion addressing the release of other material identified as PPM, as necessary, on the basis that it is not protected from release.

natural person, the weight of authority holds that when a corporation dissolves, any legal privilege the company held dies with it. *S.E.C. v. Carrillo Huettel LLP*, 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015) (collecting cases); *see also Official Comm. of Admin. Claimants ex rel. LTV Steel Co., Inc. v. Moran*, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011) (weight of authority suggests attorney-client privilege does not survive death of corporation); *TAS Distrib. Co. v. Cummins Inc.*, No. 07-1141, 2009 WL 3255297, at *2 (C.D. Ill. Oct. 7, 2009) ("No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain."); *City of Rialto v. U.S. Dept. of Defense*, 492 F. Supp. 2d 1193, 1197 (C.D. Cal. 2007) ("[A] dissolved corporation is not entitled to assert the attorney-client privilege."); *Lewis v. United States*, 2004 WL 3203121, at *5 (W.D. Tenn. Dec. 7, 2004) ("The attorney-client privilege cannot be applied to a defunct corporation.").

"A dissolved corporation does not have the same concerns as a natural person and therefore has less need for the privilege after dissolution is complete.  As there are usually not assets left and no directors, the protections of the attorney-client privilege are less meaningful to the typical dissolved corporation."  *City of Rialto*, 492 F.Supp.2d at 1200.  "Moreover, because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it should be applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney."  *Id.*  "The weight of federal authority supports a holding that there is a presumption the attorney-client privilege is no longer viable after a business entity ceases to function."  *Walters*, 2020 WL 1934803, at *2.

Under Texas law, the Comptroller of Public Accounts may deem a company's charter or registration forfeited which fails to pay its franchise taxes, and it may terminate the company's rights to conduct business in the state.  *See* Tex. Tax Code §§ 171.251, 171.2515.  If the entity

does not revive its forfeited privileges within 120 days of the forfeiture, the Texas Secretary of State may then administratively forfeit the charter, certificate, or registry of the taxable entity. *See* Tex. Tax Code §§ 171.309-171.310. A forfeiture in the State of Texas has the effect of revoking or terminating an entity's registration or certificate of formation. *See* Tex. Bus. Orgs. Code § 12.155. A corporation whose privileges are forfeited for failure to pay franchise tax "shall be denied the right to sue or defend in a court of this state." Tex. Tax Code § 171.252.

## ARGUMENT

## I.   NO VALID PRIVILEGE INTEREST EXISTS OVER THE RECORDINGS BECAUSE THE PRIVILEGE HOLDER, CC PHARMACY, IS OFFICIALLY DISSOLVED WITH NO CONTINUING OPERATIONS

No live privilege protects the Recordings from disclosure because CC Pharmacy, the erstwhile privilege holder, is a dead company—both administratively and operationally. Courts considering similar issues have agreed that "[a]bsent some compelling reason to the contrary, the attorney-client privilege does not survive the death of the corporation." *See Walters*, 2020 WL 1934803, at *2 (quoting *TAS Distrib. Co.*, 2009 WL 3255297, at *2). Here, the State of Texas administratively dissolved CC Pharmacy corporate entities, the company is otherwise defunct and non-operational, and no compelling interest supports the revival of its privileges. Thus, it no longer possesses valid attorney-client privileges.

*First*, the State of Texas officially dissolved CC Pharmacy several years ago. Beginning in October 2018, the Texas Comptroller of Public Accounts "involuntarily ended" the company's right to transact business in the State of Texas due to its failure to pay franchise taxes. Exs. A-C at 2. Then, after the company failed to take corrective action to remedy the Comptroller's suspension, the Texas Secretary of State dissolved the entity, forfeiting the company's charter, certificate, or registration. Exs. A-C at 1. Accordingly, the company could not—and did not—

8

operate legally under the laws of the State of Texas since at least October 2018 and February 2020 for one of its affiliates, CC Pharmacy 3, LLC.  *Id.*

*Second*, CC Pharmacy has not been operational for at least as long as its corporate dissolution.  The company did not submit any corporate filings to the Texas Secretary of State following the dissolution described above, including any documents seeking to revive its forfeited registrations.  *See* Ex. D.  Nor has the company had any active pharmacy licenses in the State of Texas since at least March 2019 (*see* Ex. F)—and the "Pharmacy Search" function on the Texas State Board of Pharmacy's website returns no results whatsoever for CC Pharmacy 2, LLC (*see* Ex. G).  Indeed, the Texas State Board of Pharmacy's records indicate that CC Pharmacy's latest inspection failed five years ago, in September 2016, because no one even answered the company's listed phone number.  *See* Ex. E at 3.  Further, commercial credit score reports through Experian confirm that none of the CC Pharmacy entities possess any active account balances, debts, open lines of credit, revenues, or any other indication that they are going concerns.  *See* Exs. H-J at 4-7 (Experian Commercial Credit Scores for CC Pharmacy companies).[11]  *See United States v. Cole*, No 1:20-cr-424, Opinion and Order [Dkt. 84] at 6 (N.D. Ohio Oct. 29, 2021) (finding defunct company could not assert attorney-client privilege in part because it "reported no revenue, expenses, or assets").  A Westlaw search of all state and federal jurisdictions for "cc pharmacy" likewise shows no active or recent legal matters.  *See* Ex. K (Westlaw search for "cc pharmacy").

As a result of its forfeiture due to its failure to pay franchise taxes, CC Pharmacy is also affirmatively "denied the right to sue or defend" under the laws of the State of Texas.  Tex. Tax Code § 171.252.  Corporate entities are creatures of state law, and under the laws of Texas where

---

[11] The commercial credit score report for CC Pharmacy 3, LLC indicates a derogatory liability amount of $415.00 in collections status that is beyond 24 months old.  *See* Ex. J at 4, 7.

CC Pharmacy was organized, the company no longer exists, nor may it defend itself in Texas courts. *See Burks v. Lasker*, 441 U.S. 471, 478 (1979) ("Corporations are creatures of state law"); *Formcrete, Co. v. NuRock Const., LLC*, No. 4:07CV290, 2007 WL 2746812, at *2 (E.D. Tex. Sept. 19, 2007) ("Corporations are the creatures of the law, and they can only exercise such powers as are granted [to them] by the law of their creation.") (internal citation omitted).  Hence, CC Pharmacy is defunct as a matter of fact and law.

*Third*, even aside from its formal dissolution in the State of Texas—and the company's failure to maintain operations or a valid pharmacy license—no "compelling interest" would justify the resurrection of the company's privilege after the company itself had been abandoned for years. This matter was indicted on June 19, 2018 for conduct directly relating to Defendants' pharmacy-related operations, namely their illegal distribution and dispensing of Schedule II-V controlled substances.  *See* Indictment [Dkt. No. 1] ¶¶ 21, 23-37.  Even if the company continued to conduct some unknown, illegitimate operations post-indictment—or post-dissolution and post-forfeiture—there is no compelling interest in protecting the "goodwill or reputation" associated with that activity.  *TAS Distrib. Co*., 2009 WL 3255297, at *2.

## II.    A FINDING THAT CC PHARMACY POSSESSES NO ACTIVE PRIVILEGE OVER THE RECORDINGS IS CONSISTENT WITH OTHER DECISIONS IN THIS CIRCUIT AND ELSEWHERE

The United States District Court for the Southern District of Mississippi recently encountered a similar issue in *United States v. Walters*, No. 2:19-CR-51, 2020 WL 1934803, at *2 (S.D. Miss. Apr. 21, 2020).  There, the court considered a request by attorneys for two defunct affiliated companies to quash a subpoena on the grounds of the former companies' attorney-client privilege.  *Id.* at *1.  The *Walters* court first surveyed other courts' decisions, finding that "[n]o real purpose would be served by continuing the privilege after operations cease" and that "[t]he

10

weight of federal authority supports a holding that there is a presumption the attorney-client privilege is no longer viable after a business entity ceases to function." *Id* at *2 (collecting cases).

The court then analyzed the status of the companies in question, which were both administratively dissolved and non-operational. *Id.* The attorney seeking to invoke the privilege argued that the companies may be able to resume conducting business; however, the court noted that the determinative factor is the "practical business realities rather than technical legal status." *Id.* Upon finding that the companies did not presently conduct any business, the court concluded that these "entities have ceased to function for purposes of determining whether the attorney-client privilege is viable." *Id.* (citing *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321, at *8-10 (Bankr. M.D. Fla. Oct. 9, 2012) (following dissolution of corporation "there is no one who can assert or waive the attorney-client privilege" as no directors or management exist). Accordingly, any attorney-client privilege they may have once had is no longer viable.

Here too, the Court respectfully should conclude that CC Pharmacy no longer possesses any valid privilege interests. Like the companies in *Walters*, CC Pharmacy is both administratively dissolved and actually inoperative. Nothing in the State of Texas's databases or elsewhere suggests that CC Pharmacy is a going concern with legitimate operations (*see supra* pp. 3-5, Exs. A-K), and as such, the Court should likewise conclude that the company has "ceased to function" for privilege purposes. *Walters*, 2020 WL 1934803, at *2.

As explained in *Walters*, no one may speak or assert privilege on behalf of a defunct company. *Id.* (citing *SEC v. Carrillo Huettel LLP*, 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015); *see also United States v. Cox*, No. 8:14-CR-0140-T-23MAP, 2015 WL 13741738, at *3 (M.D. Fla. Oct. 7, 2015), *report and recommendation adopted sub nom. United States v. Biddix*, No. 8:14-CR-140-T-23MAP, 2015 WL 9473949 (M.D. Fla. Dec. 29, 2015). Here, no one

possesses authority to speak on behalf of CC Pharmacy, the former privilege-holder, because the company is dead both on paper and in reality.  Thus, the company has no active members, officers, or directors that legally could assert privilege or otherwise speak on its behalf.  In fact, the only circumstance where courts have found that a privilege may in some cases survive a corporate dissolution, is where the company is going through the wind-down process or some other legal process like restructuring, where an individual is still legally authorized to speak on the privilege-holder company's behalf.  But CC Pharmacy is not being wound down, nor being restructured, nor being held in trust for the benefit of its creditors.  It is simply gone.  *See Trading Technologies Int'l, Inc. v. GL Consultants, Inc*., 2012 WL 874322, at *4 (N.D. Ill. Mar. 14, 2012) (drawing distinction between a "company that has ceased normal business operations but is still going through the windup process," which might be able to assert privilege, and a "completely defunct company," which cannot).  Accordingly, neither Defendant Carr, nor any other party, may assert privilege on behalf of a completely defunct company like CC Pharmacy.

Finally, the Texas Tax Code affirmatively prevents CC Pharmacy from appearing in legal matters in Texas due to its failure to pay the relevant franchise taxes.  *See* Tex. Tax Code § 171.252 (providing that company whose corporate privileges are forfeited for failure to pay franchise tax "shall be denied the right to sue or defend in a court of this state").  Hence, CC Pharmacy's ability to assert privilege in Texas courts expired with the company, along with the company's privilege itself.

12

## <u>CONCLUSION</u>

For the foregoing reasons, the United States of America, by and through its assigned Filter Team, respectfully requests that the Court grant its instant Motion for Authorization to Release Four Telephone Recordings Subject to Privilege Assertion.


This the 1st day of November, 2021

Respectfully submitted,

JENNIFER B. LOWERY
ACTING U.S. ATTORNEY

JOSEPH BEEMSTERBOER, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By:     */s/ Timothy J. Coley*
        TIMOTHY J. COLEY
        District of Columbia Bar No. 997762
        Trial Attorney
        United States Department of Justice
        Criminal Division, Fraud Section
        Special Matters Unit
        1400 New York Avenue NW
        Washington, DC 20530
        Tel: (202) 514-0395
        Fax: (202) 514-3708
        Timothy.J.Coley@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 1, 2021, I filed the foregoing with the Clerk of the

Court using the CM/ECF system.


*/s/ Timothy J. Coley*
TIMOTHY J. COLEY

Trial Attorney, Fraud Section