UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA § | | |
| § | | |
| v. § | | Case No. 18-CR-339 |
| § | | |
| CLINT CARR, § | | |
| HASSAN BARNES, and § | | |
| FRAISEL HUGHEY, § | | |
| § | | |
| Defendants. § | | |

**UNITED STATES' NOTICE OF INTENT TO INTRODUCE
EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

The United States, by and through the undersigned, hereby notices its intent to offer evidence of other acts as to Defendants Clint Carr, Hassan Barnes, and Fraisel Hughey. Such evidence should be viewed as intrinsic to the charged conspiracy and should be admissible outside of Federal Rule of Evidence 404(b). Nonetheless, the United States, in an abundance of caution and to satisfy its pre-trial obligations, hereby notices its intent to offer the below-referenced evidence against Defendants Carr, Barnes, and Hughey, for purposes allowed by Rule 404(b).

**Evidence Being Offered**

The United States seeks to introduce at trial the following: (1) false statements made or affirmed by Defendant Carr to state and federal authorities; (2) evidence of Defendant Carr's and Defendant Barnes's decision to not report controlled substance dispensing to state authorities; (3) evidence regarding the operation of, and unlawful distribution from, First Choice Pharmacy; (4) false statements and deception by Defendant Carr to drug wholesalers; (5) evidence regarding warnings from the Texas State Board of Pharmacy (TSBP) and Defendant Carr's false statement in response; (6) evidence regarding prescriptions, IDs, and pill bottles found at Defendant

1

Hughey's residence; and (7) steps taken by Defendant Hughey to prevent Lisa Jones from cooperating with law enforcement.

*False Statements to State and Federal Authorities*

The indictment charges conduct surrounding activities at CC Pharmacy, CC Pharmacy 2, and CC Pharmacy 3, each of which were jointly owned by Defendant Carr and Dustin Curry. Because Curry was previously arrested for a drug-related offense, Defendant Carr and Curry agreed to omit Curry's name from all CC Pharmacy locations' official ownership paperwork. They agreed to falsely claim that Defendant Carr was the pharmacies' sole owner to authorities such as the TSBP, DEA, and IRS. Defendant Carr and Curry sought to conceal Curry's ownership to reduce the likelihood that authorities, such as the DEA or TSBP, would take an interest in CC Pharmacy. Defendant Carr's desire to not attract the attention of authorities is evidence of his intent and knowledge that CC Pharmacy would and did unlawfully distribute controlled substances.

The United States intends to introduce CC Pharmacy's Community Pharmacy License Application to the TSBP, in which Defendant Carr certified that he was CC Pharmacy's only owner. (Ex. A). In the same document, TSBP asks of all managing officers, "For any criminal offense, including those pending appeal, have you ever: A. been arrested?" (Ex. A at 6). The United States also intends to introduce IRS forms for CC Pharmacy 2 and CC Pharmacy 3, both of which are addressed to "Clint C Carr Sole Mbr." (Ex. B). The United States also intends to introduce testimony that at the DEA inspection of CC Pharmacy 3, Defendant Carr and Curry portrayed Defendant Carr as the sole owner and Curry as a business associate.

2

In addition to being intrinsic to the conspiracy, evidence regarding false statements and deception to federal and state authorities is offered to establish Carr's knowledge, intent, plan, preparation, and absence of mistake or accident.

*Failure to Report Dispensing Controlled Substances to TSBP*

Texas pharmacies must report all controlled substances dispensed by a pharmacy to the TSBP, and before September 2016 to the Texas Department of Public Safety (DPS). The United States intends to introduce testimony through Curry and Adam Long, the operations manager at CC Pharmacy, that Defendant Carr, Defendant Barnes, and Curry made the decision to not report CC Pharmacy's dispensing of controlled substances to the TSBP or DPS in an effort to evade detection from law enforcement of CC Pharmacy's unlawful dispensing. The United States also intends to introduce the DPS Pharmacy Dispensing History Report reflecting CC Pharmacy reported dispensing zero prescriptions between May 2, 2016 and April 23, 2018. (Ex. C).

In addition to being intrinsic to the conspiracy, evidence regarding failure to report CC Pharmacy's controlled substance dispensing to the proper state regulatory bodies is offered to establish Defendant Carr's and Defendant Barnes's knowledge, intent, plan, preparation, and absence of mistake or accident.

*Operation of First Choice Pharmacy*

The United States intends to introduce testimony regarding the unlawful distribution of controlled substances at First Choice Pharmacy. Dustin Curry and Defendant Barnes worked at First Choice Pharmacy prior to Defendant Carr and Curry opening CC Pharmacy. Curry was the manager and Defendant Barnes a pharmacist. Lisa Jones was a customer of First Choice Pharmacy, where she purchased controlled substances for Defendant Fraisel Hughey. Curry and

3

Defendant Barnes distributed controlled substances from First Choice Pharmacy to customers such as Lisa Jones based on fraudulent prescriptions, which were then unlawfully diverted to the illegal market, including by Defendant Hughey.

The United States intends to introduce testimony through Curry and Jones about First Choice Pharmacy. Prior to opening CC Pharmacy, Curry described First Choice's operation to Defendant Carr. Defendant Carr and Curry agreed to operate CC Pharmacy just as First Choice Pharmacy operated. They also agreed to recruit customers and employees from First Choice Pharmacy to CC Pharmacy. Curry recruited Defendant Barnes, who provided guidance to Defendant Carr and Curry in setting up CC Pharmacy. Defendant Barnes provided Curry with names of doctors whose prescriptions were being filled at First Choice Pharmacy, offered to set Curry up with drug wholesalers, and recruited First Choice Pharmacy's customers to come to CC Pharmacy.

The United States intends to introduce text messages between Defendant Barnes and Curry from November and December 2015, in which Defendant Barnes provides images of prescriptions, discusses assisting with wholesalers, and requests business cards (which Defendant Barnes uses to recruit First Choice Pharmacy's customers). (Ex. D). The United States also intends to introduce text messages between Defendant Barnes and Curry from March 2016, in which Defendant Barnes agrees to help Curry get "contact info for Rita Miller 'RM', Tynesha Woodruff 'TY', Galen Smith 'GS', Mike Caldwell and any others I might not be thinking of. I want to start lining up patients for day one." (Ex. E). "Rita Miller" was the pseudonym Jones used for purchasing controlled substances from First Choice Pharmacy and CC Pharmacy. Tynesha Woodruff and Mike Caldwell were also customers of both First Choice Pharmacy and CC Pharmacy—they dropped off fraudulent prescriptions in bulk and purchased controlled substances with cash. The United States

4

intends to introduce testimony that, while Defendant Barnes was working at the First Choice Pharmacy location, he provided a CC Pharmacy business card to Jones and invited her to bring prescriptions to CC Pharmacy.

Finally, the United States intends to introduce a photograph of a diphendramine pill bottle found at Defendant Hughey's residence, bearing patient name SG and pharmacy Express Meds Pharmacy, which was First Choice Pharmacy's dba. (Ex. F).

In addition to being intrinsic to the conspiracy, evidence regarding First Choice Pharmacy is offered to establish Defendant Carr's knowledge, intent, plan, preparation, and absence of mistake or accident. Curry described First Choice Pharmacy's operation to Defendant Carr and the two of them agreed to operate CC Pharmacy in the same manner. The evidence regarding First Choice Pharmacy is similarly offered to establish Defendant Barnes's knowledge, intent, plan, and absence of mistake or accident. And evidence regarding First Choice Pharmacy is offered to establish Defendant Hughey's identity, knowledge, intent, and plan.

*False Statements and Deception to Drug Wholesalers*

Defendant Carr and Curry's business plan required them to maximize the number of controlled substances they could sell from CC Pharmacy, which in turn required them to maximize the number of controlled substances they could buy from drug wholesalers. Defendant Carr filled out and/or signed many of the applications for accounts with drug wholesalers, which often contained false statements about CC Pharmacy's business. For example, the United States intends to offer the "Pharmacy Questionnaire" for DV Medical Supply, on which Defendant Carr falsely claimed that CC Pharmacy was *not* a closed door pharmacy, that on average only 10% of the prescriptions it filled were for controlled substances, and that Insurance and Medicare/Medicaid

5

make up 80% of its business. (Ex. G). The United States also intends to introduce text messages between Carr and Curry from May 2016, in which Defendant Carr and Curry agree to "doctor" copies of their TSBP license to send to drug wholesalers in order to expedite CC Pharmacy's ability to purchase controlled substances. (Ex. H).

Drug wholesalers also required CC Pharmacy to submit routine drug utilization reports ("DUR") showing what drugs they dispensed. The United States intends to introduce evidence testimony that Defendant Carr and Curry falsified CC Pharmacy's and CC Pharmacy 2's DURs to make it appear that they were dispensing fewer controlled substances and more non-controlled substances. The purpose of this deception was to ensure that wholesalers would continue selling controlled substances to Defendant Carr and Curry.

In addition to being intrinsic to the conspiracy, evidence regarding false statements and deception to drug wholesalers is offered to establish Defendant Carr's knowledge, intent, plan, preparation, and absence of mistake or accident.

*Warning From TSBP and Defendant Carr's False Statement in Response*

TSBP conducted an unannounced inspection of CC Pharmacy 2 (located in Austin) in March 2017 and issued a number of warnings. The United States intends to introduce text messages between Defendant Carr and Curry containing the TSBP warnings (Ex. I), as well as Defendant Carr's misleading response to TSBP. (Ex. I). Among TSBP's warnings was "Failure of pharmacy to engage in business . . . (i.e. open within 6 months) and/or failure to operate pharmacy." (Ex. I at 3). In response, Defendant Carr falsely wrote "Effective in the month of April, we will begin to engage in business and filling prescriptions. This began on 04/10/17." (Ex. J at 5). Prior to the TSBP inspection, CC Pharmacy 2 had been purchasing controlled substances

and shipping them directly to CC Pharmacy in Houston—CC Pharmacy 2 was not filling prescriptions. This practice continued until at least June 2017, contrary to Defendant Carr's assurance to TSBP.

In addition to being intrinsic to the conspiracy, TSBP's warning, and Defendant Carr's subsequent false response, is offered to establish Defendant Carr's knowledge, intent, plan, preparation, and absence of mistake or accident. The warning and subsequent false response are evidence that Defendant Carr knew that the way he and Curry were operating CC Pharmacy 2— as a pass-through to maximize the number of controlled substances CC Pharmacy could distribute—was wrong, a fact he sought to conceal from TSBP.

*Prescriptions, IDs, and Pill Bottles Found at Defendant Hughey's Residence*

Investigators executed a search warrant at Defendant Hughey's residence on November 15, 2017. The United States intends to introduce items found by investigators during the search, including blank prescriptions, blank prescription paper, photocopies of numerous Texas and Louisiana ID cards, and pill bottles bearing "patient" names other than Defendant Hughey's. Among the blank prescriptions were Schedule-II prescription pads (often referred to as "triplicates") for doctors whose prescriptions were filled at CC Pharmacy, including Dr. Linh Nguyen and Dr. Marcos Ikeda. (Ex. K, which also includes a prescription pad for Dr. Hui Kang). Many of the copied ID cards bear the names of people who were purported patients receiving controlled substances from CC Pharmacy. And the pill bottles bear the label "CC Pharmacy," pharmacist "Hassan Barnes," and patient names other than Defendant Hughey's. (Ex. L). The evidence recovered from Defendant Hughey's residence is offered to establish Hughey's knowledge, intent, plan, preparation, opportunity, and identity.

*Intimidation by Hughey of Lisa Jones*

Jones was stopped by law enforcement leaving CC Pharmacy on her way to Defendant Hughey's house on August 15, 2017. After she was stopped, Defendant Hughey believed that Jones was working with law enforcement. The United States intends to introduce evidence of the steps Defendant Hughey took to prevent Jones from cooperating with law enforcement, including testimony from Jones and text messages between Defendant Hughey and Jones. On August 16, 2017, the day following Jones's stop, Hughey sent a text to Jones to confirm she "wouldn't do anything to hurt" Defendant Hughey and told her to "erase our texts" and not "store" them on her phone. (Ex. M). He, along with an accomplice (Person 1), searched Jones's car looking for recording or tracking devices. Person 1 also went to Jones's house, uninvited, to search through Jones's belongings. Defendant Hughey told Jones that she needed to prove that she was not working for law enforcement by picking up drugs from CC Pharmacy on the weekend. Person 1 accompanied Jones to CC Pharmacy for the weekend pickup, while Defendant Hughey watched from another vehicle.

## **Applicable Law**

"It is well established that where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the Government's proof." *United States v. Watkins*, 591 F.3d 780, 785 (5th Cir. 2009). "Evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how the [defendant] became a member." *Id.* at 784 (citing *United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir. 1985)). Moreover, "evidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy [is] not extrinsic evidence"; instead, "[a]cts committed in furtherance of the conspiracy are themselves part of the act charged." *United*

*States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998)). "Thus, evidence of such acts constitutes intrinsic evidence – that is, direct evidence of the charged conspiracy itself." *Id.*

### Argument

All of the evidence described in this Notice is intrinsic to the conspiracy to distribute and dispense controlled substances, charged in Count One of the Indictment. With the exception of the evidence about the operation of First Choice Pharmacy, all of the evidence described in this Notice describes co-conspirators' actions "committed in furtherance of the conspiracy [that] are themselves part of the [crime] charged." *Id.* Evidence regarding the operation of First Choice Pharmacy is similarly intrinsic because "it is relevant to establish how the conspiracy came about, how it was structured, and how the [defendants] became [] member[s]." *Watkins*, 591 F.3d at 784.

For the above reasons, the evidence being offered should be admitted, either as intrinsic to the conspiracy or as Rule 404(b) evidence.

                                          Respectfully submitted,

                                          JENNIFER B. LOWERY
                                          United States Attorney

By:   */s/ Devon Helfmeyer*
        Devon Helfmeyer
        Courtney Chester
        Trial Attorneys
        United States Department of Justice
        1000 Louisiana Street, Suite 2300
        Houston, TX 77002
        713-567-9513
        Devon.Helfmeyer@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 6, 2022, I electronically filed and served this document on defense counsel of record using CM/ECF.

                                      /s/ *Devon Helfmeyer*
                                      Devon Helfmeyer